The first case we have today is Bennett v. Supt Graterford SCI, No. 16-1908. Ms. Kang, Mr. Wee, is that correct? And Mr. Frankel. May it please the court, my name is Kay Kang, and along with my co-counsel Michelle Wade, I represent a parent, Tom Bennett. As a student from China, I'm aware my English is not perfect sometimes. If the court has any difficulty understanding anything I say, please let me know, and I will try my best to rephrase it. You're doing fine so far. Thank you. Bennett's co-defendant, Kevin Vine, has already had his first-degree murder conviction located based on the same erroneous jury instruction. Under any standard of review, the trial court's jury instruction validates due process by allowing the jury to convict Mr. Bennett's first-degree murder without finding specific intent to kill. Are you suggesting that we should review this de novo? Yes. Or under EPA? We should use de novo. Why?  So basically what you have to say is that Pennsylvania courts have dealt only with Pennsylvania law and they have not considered any federal overlay? Yes, Your Honor. This is one of our main arguments. Pennsylvania Supreme Court only relies on state law. And more important, the state law standard is less protective than federal law standards. How so? So, even Pennsylvania Supreme Court itself admits this. Judge Cecilio, in his concurrent opinion of Bennett's, stated that the first-degree murder instruction requires a defendant to have specific intent to kill and such instruction ameliorates any potential ambiguity which might otherwise come from conspiracy or co-conspiracy liability instruction. And further, Judge Cecilio in the Commonwealth v. Sepulveda and the Commonwealth v. Jones recognized this state and federal divide again by stating that the third-circle court appeal takes an entirely different view as a matter of federal due process claim. What do you make of the Commonwealth's argument that there were many references in the jury charge to the specific intent, particularly when the judge charged a first-degree murder? Yes, Your Honor. There are indeed some references to specific intent of each defendant, but that is only limited on the first-degree murder instruction part. So, that's the point that the state law has difference with federal law. In state law, the state law holds that as long as a first-degree murder instruction identifies that each defendant must have specific intent to kill, then the whole instruction is satisfactory. While in federal law, it reviews every part of instruction to assess whether there is any ambiguity which might allow the jury to convict the defendant without finding specific intent to kill. So, let's see if we can put all of this in context. There were two jury instructions, one relating to conspiracy. Yes. And one relating to murder. Yes, Your Honor. And actually, one relating to first-degree murder. Yes. You don't have a problem necessarily with the murder instruction, do you? Actually, we do. My co-consultation will address this part. But assuming the first-degree murder instruction is correct, the whole juror's instruction is still not satisfactory under the federal law standard. So, what of the conspiracy instruction to the jurors do you particularly have a problem with? Yes. Generally… Do you have it in front of you? Yes. Do you have the actual instruction? Yes, we do. Point us out where you think there is a significant problem that might confuse the jurors pertaining to conspiracy. And I assume that what you're going to say is that it will confuse them in a way that they could convict of first-degree murder without the actual element of showing intent for first-degree murder. Is that correct? Yes, Your Honor. Okay. What do you have? So, the conspiracy liability instruction, you generally just tell the jury that once you conspire one act, then you conspire for all the consequences of the act. So, in that case, the male is the… He's the shooter. Yes, he was the shooter. And then the general of the case liability… Your Honor, I know my time. Keep going. So… You have a lot of time. Okay. So, it told the jury that it imputes the male's intent to kill to Bennett, which actually Bennett did not have any specific intent to kill. Although Bennett, unlike Wyatt, provided the gun, did he not? Well, Your Honor, yes, he handed the gun, but we do have a lot of evidence to show that there was no shooting planned or intended. So, I don't think that matter is material in deciding his federal due process claim. The jury returned a verdict on first-degree, not second-degree, correct? Yes, Your Honor. And first-degree requires specific intent, correct? Yes. It's your argument that the conspiracy instructions did not reference the specific intent, correct? Yes, Your Honor. Okay. So, for those reasons… And Pennsylvania Supreme Court only relies on state law, including the commonwealth's Martin Hoffman and is subsequent of case law analyzing Hoffman. So, for those reasons, de novo review should be applied. In what way is Pennsylvania law deficient in comparison to federal law requirements for instruction to jurors on conspiracy? So, could you repeat the question? In what way is Pennsylvania law deficient in comparison to federal law? So, the major difference is federal law also reviews the conspiracy liability and assess the validity of the jury instruction as a whole, while state law almost ignores the conspiracy liability instruction when they feel the first-degree murder instruction is correct. Is that because the federal law insists that all the elements be proven? Yes, Your Honor. The federal law requires all necessary facts should be proved, beyond reasonable doubt. Thank you.  Thank you. Good afternoon, Your Honors. I would like to reserve two minutes for rebuttal. That's fine. Thank you. May it please the Court, my name is Misha Wheat, co-counsel for Appellant Tony Bennett. I will be addressing how these instructions violated Mr. Bennett's due process rights. Obviously, you want to focus on the criminal conspiracy instruction. Yes, Your Honor. Okay. So, the portion of the instruction that Appellant takes issue with is, if I may recite, if you or more join in the commission of an unjustified assault which results fatally, all are guilty regardless of which one inflicts the mortal wounds. Do you have the appendix number? Yes, Your Honor. It should be Appendix 600 through 604. All right. It's the entirety of the jury charge. Imagine if Judge Hay had this portion. I've got the appendix here. Okay. Perfect. When two or more combine to commit a felony or to make an assault and in carrying out the common purpose another is killed, one who enters into the combination but does not personally commit the wrongful act is equally responsible for the homicide as the one who directly causes it. The instructions continue to say such responsibility attaches even though such conspirator was not physically present when the acts were committed and extends even to a homicide which is not specifically contemplated by the parties. Now, the Commonwealth spent a lot of its focus in its reply examining the soundness of the first degree murder instruction. Now, we clearly take issue with the first degree murder instruction by virtue of the fact that a reasonable jury could have likely assumed the word defendant to also be a reference to the shooter, Mr. Mayo. Well, it does in one place. I mean, the court read into the word in front of defendant each and the first degree murder instruction says now in this bill you may find each defendant guilty of murder in the first degree, etc., murder in the first degree, murder in the second degree or third degree or manslaughter or not guilty. The problem comes down a couple of paragraphs later a killing is willful and deliberate if the defendant consciously decided to kill the victim. Correct. The court read each in and each isn't really there in the actual instruction. Precisely. But for that, it's a pretty good instruction, is it not? So, our issue isn't primarily with the first degree murder instruction. We think despite the potential confusion that a juror could have conceived of Mr. Mayo as being a defendant, even if the first degree murder instruction is without error, it merely contradicts the portions of the vicarious liability instructions which state that Mr. Bennett could be held liable for the acts of his co-conspirator irrespective of his intent. So, how should the court have charged? Should the court have emphasized that the vicarious liability, the conspiracy, also required that the government approve specific intent? So, that is precisely correct. And since Mr. Bennett's trial, the commonwealth has adopted a pattern jury instruction after a case called Commonwealth v. Chester where the subcommittee that adopted that model jury instruction stated that there is an implicit risk, sort of an inherent ambiguity when you instruct on a multi-object conspiracy which includes first degree murder and you later instruct the jury on the general theory of accomplice liability or co-conspirator liability. Is that in response to Chief Justice Saylor's concurring opinion in Sepulveda? I'm sorry? Was that change in the jury instructions in response to Chief Justice Saylor's opinion in Sepulveda? We think yes. And in addition, the clarifying instruction that the Supreme Court discussed in Francis v. Franklin, the language that merely contradicts apt and an explanatory language, we can't assume that the jury followed one instruction over the other. And in that sense, this clarifying instruction that the commonwealth has since adopted recognizes the precise ambiguity that we suggest existed here. The only difference being that nothing in these jury instructions as they were read in Mr. Bennett's trial can reasonably be read as a clarifying instruction. So to that point, the commonwealth recognizes that there is a natural risk of jury confusion when you have a general accomplice liability instruction and even a sound first degree murder instruction. And this court has previously held in Braunstein that even with a sound first degree murder instruction, errors in the vicarious liability instructions can ripen to a due process violation if the court fails to explain the contradiction between these two instructions. And in that case, this court cited precisely to the language in Francis that appellant relies on today. Additionally, the accomplice liability instructions created a similar presumption that this court has held to be violative of due process in Smith and in Laird. When the court instructed the jury that the degree of collusion between the parties to an illegal transaction means the act of one is the act of all. This instruction and the entire accomplice liability instruction failed to ever clarify for the jury that if accomplice meant accomplice to the robbery, accomplice to the murder, or both. Meaning that a reasonable jury could have interpreted these accomplice liability instructions to say that Mr. Bennett could be held liable for all acts and that an accomplice for one purpose is an accomplice for all purposes. And this is the precise error in instruction that this court held violated due process in both Smith and in Laird. Essentially what you're saying is there wasn't an instruction that you have to have the intent to commit first degree murder if you were part of a conspiracy or an accomplice. That's correct, Your Honor. And the point that each defendant must have found to have specific intent calc in the first degree murder instruction does not clarify to the jury that if Mr. Bennett was found to be a co-conspirator by virtue of his agreement and participation in the robbery that they would need to make an independent finding of his specific intent in order to return a conviction of first degree murder. That essential element was never clarified to the jury. But as we talked about before, unlike Wyatt who was just in the getaway car, Bennett supplied the gun when Mayo had come back after the first time he was in the pawn shop, right? Yes, there is testimony to that effect, Your Honor. But there is also testimony at trial that Mr. Bennett and no one in the conspiracy intended anyone to be hurt. So with regards to whether or not this error could be harmless, this court has cautioned previously that the correct inquiry is not rather to just look at all properly admitted evidence that's suggestive of defendant's guilt by virtue of the jury having found him guilty, but rather to look at the entire record and also weigh the evidence that is in his favor. And in this instance, though he's arraigned... Yes, Your Honor. But even giving a gun to someone who has proven in the past to be an irrational person does not necessarily speak to the intent that that gun be used in a manner to commit a homicide. And Keisha Ray, the Commonwealth's witness at trial, testifies to this precise fact that no one in the conspiracy had intended anyone to get hurt.  So if this court is examining whether or not this error was harmless, we would need to examine the entire record and consider both of these pieces of evidence, Your Honor. Judge Nygaard, do you have any questions? I have none, thank you. Thank you. Thank you, Your Honor. Mr. Rodette. Good afternoon, Your Honors. My name is Christopher Lynott. I'm an assistant district attorney. I'm here in appellees with the Commonwealth respondents below. And we're asking you to affirm for one simple reason, because the Supreme Court of Pennsylvania did not unreasonably adjudicate Mr. Bennett's ineffective assistance of counsel claim. Let me ask you something. Yes, Your Honor. You briefed all about ineffective assistance of counsel. Yes, Your Honor. And you even suggest in your opening papers that Judge Hay also suggested that the COA was about ineffectiveness. And I'm reading Judge Hay's language. Although I conclude that Bennett's claim does not warrant habeas relief, I will recommend that a COA issue on Bennett's due process claim. She didn't say anything about ineffective assistance of counsel. This was a stand-alone due process claim that was framed. You briefed it as if it were an ineffective assistance of counsel claim. This is all about word trip, isn't it? Your Honor, we always went, first of all, Judge Hay repeatedly, it's at record 13 and 24, always referred to it as an underlying due process claim. Did you read the COA? I just read it to you. I read the COA, Your Honor. That's what she granted the COA on. Absolutely. And then you, in turn, framed it as an ineffective assistance of counsel claim. Because we framed it that way, Your Honor, because that was the only claim that was exhausted in the state court proceedings. And the reason we know this is because there was no objection raised to these instructions during the jury trial. It wasn't raised in a post-trial motion, and it wasn't raised on direct appeal. That comes directly from the PCRA Court's opinion. And, in fact, Mr. Bennett's petition on PCRA review, which is available at 2011 Westlaw 348-7755, says this is an ineffective assistance of counsel claim. So that is a claim that is properly exhausted and before this court. And the easiest way, Rainey controls. Rainey overruled Everett v. Beard and said you have to show a reasonable probability that he would have been acquitted of second-degree murder. I'm lost here. Yes, Your Honor. Let's go back to the beginning. Bennett did not object to the instruction, his attorney did not object to the instruction to trial or file a direct appeal. May I? In the PCRA proceedings, he alleged that his trial and appellate counsel were ineffective. So you're correct? Yes, I agree with that. It's all fine so far. But the certificate of appealability that was granted deals with due process. And had you raised this issue on habeas, procedural default would likely preclude addressing the claim, unless you could show that there was a cause for default and prejudice resulted. Which they never alleged. But where do you raise that objection on exhaustion grounds? Well, first of all, throughout our brief below, you see everything we reference as part of an overarching ineffective assistance of counsel claim. What about your brief here? Excuse me, Your Honor? Here. What about the brief you filed here? On page 20, we explicitly lay out that this is an ineffective assistance of counsel claim. On page 24, we repeat that. Your Honor, it's on page 14 of their opening brief. Petitioner says, the Supreme Court of Pennsylvania only addressed the ineffective assistance of counsel claim. It was so obvious from this record, we thought it was clear that this was an ineffective assistance of counsel claim. And that's all that was exhausted in the state courts. And Judge Ambrose, if you're wondering, 2254B3 requires an explicit waiver. And this court's holding in Sharif. If you'd like to cite it, I can give it to you. It is 574F225. The problem that you have is that 2254 applies if there has been an adjudication on the merits of Bennett's federal claim. Yes, Your Honor. It does not apply if there has not been an adjudication on the merits of Bennett's federal claim. There has been an adjudication of the ineffective assistance of counsel claim, Your Honor. What you're doing is, in effect, a nesting argument. Somehow, through the ineffective assistance of counsel claim, the counsel did not bring up that there was an error, a due process error, with regard to the conspiracy instruction. Is that correct? Yes, Your Honor. And this court, Harrington v. Richter, the Supreme Court has made very clear that federal courts have to honor the claim that was raised in state court. The claim that was raised in state court here is Strickland. And this court, in fact, in Sink. So what rebutts the presumption of adjudication? In other words, what gets us in or out of habeas land? It would seem to be if the federal claim is rejected directly by the Pennsylvania state courts. Isn't that correct? Yes. And the federal Strickland claim was, Your Honor. And all you have to do is to look to now Chief Justice Saylor's concurrence, which the majority joined, and said, as a practical matter, this is a Strickland claim. And if you can go back to the 2007 appeal of the Supreme Court, Chief Justice Saylor said there, this is going to be an academic exercise because Petitioner, Mr. Bennett, is never going to be able to show prejudice. And so we're in agreement on that point. But if you want to rely on Chief Justice Saylor.  Yes, Your Honor. If the counsel did not bring up a good and valid claim, and therefore he was ineffective, if we deal with it that way, it still goes back, doesn't it? I don't understand. Because the counsel was ineffective. In other words, if counsel was ineffective, then you go back and you have a redo, don't you? No, Your Honor, because he has to show prejudice under Strickland. And Petitioner has never been able to assert prejudice. Even in the reply brief, there was no prejudice asserted. He was convicted of first-degree murder when he could have been convicted of, at most, second-degree murder. And this court's precedent in Rainey says that that is the end of the inquiry, Your Honor. This court in Rainey says that. And in fact, in Rainey, they explicitly overruled Everett v. Beard and said that is an incorrect analysis. You have to look at whether there's a reasonable probability of a different result. And that's just not available here. Well, let's look at the merits here. Is the Pennsylvania law less protective, more protective, or equivalent to what is required under federal law in connection with instructions to jurors? I think in this case, Your Honor, in Bennett's case, it was absolutely in accord with Sarasow. It reviewed the instructions as a whole. It considered the evidence at trial, which is exactly what Sarasow did. And in fact, the Supreme Court in Sarasow applied a sufficiency of the evidence standard when looking at the evidence that was against Petitioner in that case. And what you have here is a robust analysis. And in fact, the Supreme Court of Pennsylvania acknowledged Everett came out the other way but said we were looking at this differently and in fact referenced ineffective assistant counsel repeatedly. That was the claim that was presented to them. And Harrington tells us that that's the claim that this court has to look at. But is it your position that the charge was okay? The charge satisfied due process? Yes, Your Honor. Absolutely. All right. Let's take a look at it. Let's go to the conspiracy charge. Do you have it in front of you? I do not, Your Honor. Do you want to grab it? Absolutely. Is it page 601? I have the actual charge itself on a criminal conspiracy. The charge is 600. Absolutely. Thank you, Your Honor. And I'm going down to the paragraph that begins where two or more join in the commission of an unjustified assault. Are you with me on that? Absolutely, Your Honor.  All are guilty regardless of the charge. Regardless of which one inflicts the mortal wounds. Then go down to two paragraphs where it begins, where the existence of a conspiracy as established in law imposes upon the conspirator full responsibility for the natural and probable consequences of acts committed by a fellow conspirator or conspirators if such acts are done in pursuance of a common design or purpose of the conspiracy. And then the key paragraphs come up. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and extend even to a homicide which is the consequence even though such homicide is not specifically contemplated by the parties. That can't be correct under federal law, is it? Your Honor, well first of all... For first degree murder, for first degree murder. And petitioner concedes, this goes to our prejudice argument, that's a correct charge for second degree murder. And it is confusing, but if you go two pages before, the criminal objective of this conspiracy was not disjunctive, it was conjunctive and raised the Commonwealth's burden. And immediately following that, you see a correct accomplice liability charge which is nearly identical to the one that was given in Sarasota in the Supreme Court and the Supreme Court said, you look at, does it allow for the replacement of one crime or multiple? That accomplice liability charge, as we laid out in the brief, allowed only for murder to be put in. And then beyond that, you have the first degree murder charge, which is absolutely correct and as we explained, Mayo was not a defendant in this case. This is not the risk that you had in Smith and Laird. It was unclear who the murderer was. It was obvious from day one of this trial that Mayo was not involved. It's stressed repeatedly. And Judge Stout even stopped the prosecutor from using a board because she said it's so obvious who these people are, you don't need to use that board. But you go down on the accomplice instruction, that portion of the instruction, a few paragraphs below, where it says the degree of concert or collusion, I think it's number six, are you with me there? Excuse me, Your Honor. The degree of concert or collusion, that paragraph that begins in the conspiracy instruction? I didn't listen to you, Your Honor. Page 604. 604, thank you, Your Honor. Line 12. The degree of concert or collusion between parties to an illegal transaction means the act of one is the act of all. And the problem is, Mayo may have had the intent to kill. For first degree murder, the others, be it Wyatt, be it Bennett, must have the same intent. And I don't see there that it says that they must have that intent. Where is it? It says it in the two paragraphs before that, Your Honor. It talks about to aid and abet in the commission of a crime. One must possess the shared intent to commit it. One is an aider and abetter in the commission of a crime. If he is joined in its commission and if it was an active partner in the intent, which was the crime's basic element, that is the Sarasota instruction. It's very similar to the Sarasota instruction. And the Supreme Court said a crime means a crime. It doesn't mean robbery. It can't change. Robbery and murder, it can't change. But the only question is that is this an unreasonable intent? What was the evidence here that Bennett intended that the woman in the pawn shop be killed by Mayo? Other than he did supply the gun. He did supply the gun, Your Honor. And I just would note the Supreme Court of Pennsylvania said the evidence was sufficient to sustain the conviction. But if you look at this record, there is testimony from Kesha Ray about two meetings, one that occurred within the KFC and a second one. Now Kevin Wyatt's testimony is very important on this point because his testimony on the stand is that I was just driving by. These guys come running out. I have no idea what's going on. And then the prosecutor confronts him with a letter that says, Well, you know what, no matter what happened, Kesha, I wasn't there when they planned it. Now he could have said a robbery. When the prosecutor said, what do you mean they planned it? He said the shooting. Kevin Wyatt was in that second huddle. Kevin Wyatt was Kesha Ray's boyfriend. He had every reason to make sure that she was not in that huddle when the shooting was planned, Your Honor. And beyond that, Bennett doubled down. He was the only person as part of this conspiracy who actively concealed his participation. He went, he met up with Mayo again, he retrieved the murder weapon, and then he destroyed it or at a minimum disposed of it, knowing it was the murder weapon used to kill Ms. Lee. That is more than sufficient evidence. And in Sarasota, the Supreme Court said even evidence of the Court of Appeals termed thin. This evidence is not thin. It's obvious that Mr. Bennett reaffirmed and re-upped his decision to join the conspiracy to kill Ms. Lee. So how does Wyatt get off for a first degree murder and Bennett not? Well, the Wyatt case, Your Honor, first, I think it was the Superior Court was, again, asking the wrong question. They did a due process analysis. They did not do an ineffective assistance of counsel. Was the charge of the court improperly permitted the jury to find Wyatt guilty of first degree murder without evidence to support that finding? Yeah. Well, first of all, they were not similarly situated. Wyatt was, at best, the getaway driver and that was it. Bennett supplied the murder weapon. So they were not factually close at all. But beyond that, Your Honor, as Petitioner talks about, there are 16 judges who worked at these juries, and 16 judges were answering the wrong question. And two of those judges, Judges Saylor and McCaffrey in the last Bennett petition, answered the right question and said, even if we bother to get into this due process and effective analysis, there's no prejudice here. There's no prejudice here because the way the state looks at it is you look at the entire instruction. That's not necessarily the way federal courts look at it. Well, that's what Rainey tells us, Your Honor. That that's the prejudice analysis that Justice Saylor and the majority in Bennett was employing. It's not the state standard. It's this court's standard. There's another case that came out in September of last year, Bowers v. Benovich. Are you familiar with that? I'm familiar. It's a magistrate judge. Yes, Your Honor. Why is the analysis by the magistrate judge there not spot on as to what we should do here? Well, first of all, they aren't factually similar cases, Your Honor. Legal analysis, though. Legal analysis. Your Honor, to be honest with you, I haven't gone thoroughly through the Bowers opinion because I was looking at the Bennett Supreme Court case. My understanding of Bowers is that they seized upon Justice Saylor's opinions, seeming to indicate that that must mean that there's an unreasonable application of federal law. Justice Saylor was not saying that. It's supposed that Saylor does suggest that there's a certain tension. There's a tension, but that doesn't amount to an unreasonable application of federal law. And I think if you look at Sarasoud, this case is right in line with the analysis that Sarasoud made clear is the proper analysis. I see I'm out of time, Your Honor. Do you have any further questions? Judge Dygart, do you have any questions? No, you've asked for all that I had. May I make one personal comment? Sure. I clerked on this court just 20 months ago for Judge Van Aske. And I just want to say what an honor it is to be back here. So thank you very much. Come back often. Next time, turn the bed light off. Mr. Wheat. Thank you, Your Honor. Just a couple of quick points. Address the prejudice issue for us. The prejudice issue, Your Honor? So prejudice is not an element of Mr. Bennett's freestanding due process claim. Now, a portion of the DA's argument, I think they're conflating the difference between strickling prejudice and harmlessness under a due process claim. So the focus of a harmlessness inquiry is not whether or not there was sufficient evidence, absent the error in the jury instruction, to support the conviction. The question is whether or not these instructions had a substantial and injurious effect on the verdict that was returned, not on some verdict that might have otherwise been returned had Mr. Bennett been convicted of second-degree murder. That is not the inquiry in front of this case as you're adjudicating Mr. Bennett's freestanding due process claim. And that, of course, is the posture of this case. In our Appendix 69, in his pro se PCRA petition, Mr. Bennett clearly identifies that he was denied a constitutional right to a fair trial, in addition to identifying the ineffectiveness issue. Additionally, in his petition for habeas relief, he identifies both a freestanding due process claim and an ineffectiveness claim. And the Commonwealth responds in kind. Page 646 of our supplemental appendix, Your Honors, is the table of contents of the Commonwealth's response to Mr. Bennett's petition in district court, and it responds both to a due process claim and an ineffectiveness claim. The affirmative defense of failure to exhaust a procedural default were not raised at the district court level. Mr. Bennett has a properly articulated freestanding due process claim. Irrespective of whether or not the Pennsylvania Supreme Court addressed that claim, he properly gave the state courts the opportunity to adjudicate that claim on the merits. They did not do so. He raised it again in his federal petition, and the Commonwealth responded in kind. So, I see that I'm out of time, but unless the court has any further questions, Your Honors. Judge Legard? I have none. Thank you. Thank you, Your Honor. Thank you very much, and thank you to all counsel. I'd like to thank the law school and Professor Frankel for really just an exceptional job that you've done with your students. It's a privilege to have you here today. It's also a privilege to have you here for the first time, I guess, arguing? Yes, Your Honor, my first time. As I said, come back often. Absolutely. Thank you so much. Thank you. Thank you, Your Honor. Take the matter under advisement and call our second case of this afternoon.